We'll be hearing two more cases this morning. The next one is Lynch v. Board of County Commissioners number 18-7020. Counsel, you may proceed. Good morning. May it please the court, my name is Christopher Camp, this is Mitchell Garrett with me at counsel table and we represent the appellants, the estate of Cody Lynch, as well as David and Holly Lynch who are the administrators of the estate of the decedent and respectively Cody Lynch's father and widow. Today we request that the court reverse the summary judgment orders that were entered by the trial court in this case for the reasons set forth in our brief on all claims except for the Bosch claim which we expressly abandoned due to precedent that's come out since Judge Payne's ruling. Today I want to address two points in support of our request for reversal and then we'll rely on our brief for the other arguments. Your honors, we believe judgment should be reversed for the following reasons. First, the trial court's dramatic departure from the rule 56 standard for summary judgment, most notably with respect to the issue of whether or not decedent Cody Lynch was effectively restrained at any point prior to his death and also with respect to the question of whether Mr. Lynch posed any threat to the officers or anyone else during the post-restraint period. The other issue that we believe on which we believe summary judgment should be reversed is the failure of the summary judgment orders to apply the Anderson standard that's necessary for determining whether there was a violation of clearly established law and I'd ask to reserve three minutes for rebuttal. Your honors, as to the first point, we're here today because the candidly the trial court abdicated its judicial responsibility when it adopted wholesale and verbatim the findings of fact and conclusions of law that were submitted by appellees. Now I admit that there's nothing inherently wrong with the trial court adopting a party's findings and conclusions in their entirety as long as they've been carefully and individually considered. But in a case like we have here, when there are clear indications that the court did not conduct an independent evaluation of the facts and evidence in the legal authorities, the court's wholesale adoption of a proposed findings of fact and conclusions of law need to be scrutinized more closely. Counselor, could I just ask you as to your claims against the individual officers? We have three individual officers left, correct? That's correct. Why aren't we required in this case, in the circumstances of this case, to assess each individual's conduct on its own rather than treating them as if they can be liable as a group? Your honor, the answer to that question, I think, lies in the Booker decision that you authored where it talks about, it's really up to the individual liability separately or, as the Booker decision stated, it can aggregate the issue when looking at qualified immunity. Well, you're right. I am familiar with Booker, but I guess my question is, are there circumstances when a court is required to disaggregate? Why wouldn't that be the case here? To be candid with you, your honor, I don't know if there are circumstances where the court is absolutely required to disaggregate its review of the liability of the individual officers. What I can represent and do submit to the court is that, in this case, even though there was one decision that the individual officers that placed pressure on Mr. Lynch's back and another one held the chains and two of them hooked up the transport belt or hog tie, they acted in concert. And that's why I think they shouldn't be independently evaluated in this case. Everybody was there at the scene. Everybody was in a relatively confined space. Everybody could see what everyone else was doing. And so you've got the failure to intervene aspect that comes into it. And I think that's kind of why you have to look at the issue together. Again, referencing the Booker decision that you offered, it talks about even if a single deputy's use of force was not excessive, a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under 1983. So what you've got to do is you have to look at what all the officers are doing in order to determine each one's liability. So it would just make more sense. It seems like it would be more judicially economical to address them together, Your Honor. Does that answer your question? Why don't you go ahead. Thank you, Judge. As I was saying, there's nothing inherently wrong with the trial court adopting a party's findings of facts and conclusions of law. In this case, however, we've got a situation where the summary judgment order has a verbatim adoption of an advocate's submission. It invites a truncated analysis of the facts and law. And candidly, in this case, you don't have to take my word for it, on page 7052 of Appellee's, that's one of the summary judgment orders that the Appellee's submitted to the trial court and that the trial court signed off on. In this order, it cites to the case of Escobedo v. Bender, and the cite on that given was 600 F3rd 770. And the order that Judge Payne signed off on says that the Escobedo case stands for the proposition that, quote, partially restrained or not, someone who is attempting to commit felony battery against law enforcement officials and experiencing some success could certainly be said to pose an immediate threat to the safety of the officers, end quote. I would submit to the court, nowhere in the cited case, the Escobedo case, does that coiled language appear. And likewise, nowhere in the Graham case that's referenced by the Escobedo case does that language appear. Well, counsel, can you help me understand what this argument goes to? I mean, essentially, is there something independent that you want us to do based on the fact that you're saying the district court adopted the submitted materials? Is there something independent or does that just go to the merits of the ruling? I think what that speaks to, Your Honor, is it, at least for me, it kind of answers the question as to why. Why could there be so many disputed facts and all this evidence that was summarily disregarded? And I wanted to know why that would be. And it was only upon looking at the, I guess, haphazard reliance on Appley's take on the legal authorities that I realized that maybe the district court did not conduct a sufficient review of the material facts as presented by the parties, that it was one-sided or that it just didn't conduct the necessary review of the record. But ultimately, isn't your argument that we review summary judgment de novo, we look at the record that was presented to the district court, and this court determines whether there is a genuine issue of material fact? That is true, Your Honor. So that's the task at hand. And what I'm interested in on a particular question is, what moment was Mr. Lynch subdued? I'm glad you raised that, Your Honor. Because it seems like you give us a multiple choice on that, but let's see if we can just pin that down. No, I don't believe there's a multiple choice. Was he subdued when he was handcuffed? Yes, Your Honor. Okay, but you also say he was subdued when the leg restraints were placed and when the waist belt was attached. Was he subdued at every one of those moments? Well, I'll rely on what defendants' experts said. They said that he was subdued, Mr. Lynch was subdued, I'm sorry, restrained at the point that he was handcuffed by Mr. Shamblin and then Officers Denny and Wildcat approached, and he said that's the point in time whenever the situation was no longer rapidly evolving. That's what defendants' experts said. And then later, with respect to the second point, when he had the leg irons affixed to his ankles and Deputy Apple was standing on those leg irons, the defendants' expert then said at this point it eradicated, I'll give you the exact quote, Mr. Clark said that it eradicated, the potential for threat was pretty much eradicated by the fact that Mr. Lynch was handcuffed and shackled. So when the leg restraints were applied. Right. But not when the handcuffs were applied. I think that's up for debate. Okay, well, let's hear it. He's been engaged in this fight with the initial officer. He's encouraging bystanders to intervene. He's struggling. He's resisting. They put the handcuffs on, but his legs are still free. Why is he not still a potential threat at that point? Okay, two points on that, Your Honor. First, I think it's important to look at the fact that all of the things that happened before Apple, Denny and Wildcat arrived, we can't even consider that because that goes, that looks 20-20 in hindsight in violation of the Graham standard. So we have to look at what they knew. They didn't know about him encouraging bystanders to attack Shamblin or these other things. Didn't that continue? Wasn't he calling out to bystanders after his handcuff? I believe all that happened in the initial. What does the record show? It shows that that happened with Shamblin and not when everybody else showed up on the scene. All right. I mean, we can pick that up from the video, but does it matter for your argument whether he was restrained before the leg restraints were imposed? No, Your Honor. Okay. Here's the reason why, is because at that point, one thing that the summary judgment orders don't address, the facts that we presented to the court do address, is the timing. If we call the affixation of the leg restraints, I see him on the three minutes, so I'm going to take one more minute. The affixation of the leg restraints, if we call that the point of restraint, then the period of post-restraint extended for five or six minutes until Mr. Lynch expired. Well, what if he got on his feet? Didn't the officers have to be concerned, even after he had the leg irons on, that he could get to his feet and fall down, hit his head on a rock, try to hop into the road? He'd already been into the road. Absolutely not, Your Honor. The testimony of the officers in this case clearly state that at the point that the leg irons were affixed, he could not move his feet and he could not move his head. This is a Deputy Apple's testimony. Deputy Apple testified, we had his legs at that point pretty well secured, so I wasn't too concerned about him kicking somebody and knocking them down or anything with his legs. And Officer Wildcat testified that once Deputy Apple applied the leg irons, Mr. Lynch no longer, quote, posed a danger to the public, end quote, nor, quote, an immediate threat to the officers. So what should the officers have done, in your view? Especially once the leg irons were applied, then Officer Denny should have released the pressure from Mr. Lynch's torso, because that's what caused him to expire, based on the medical examiner's report. I'll sit down for right now. Counsel, I need to ask you, on the qualified immunity issue, what's your best case for clearly established law? Your Honor, the best case for clearly established law is not even addressed in the summary judgment orders. Weigel, the pressure on somebody's back after they've been restrained, okay? Booker, which adopts that aspect of Weigel, and also talks about the need to rapidly perform CPR, and then also Cruz, which is the application of the hogtie technique on a suspect who is suspected to be of a diminished capacity. Those are the controlling authorities against which the officer's conduct needs to be measured. And I just point out that the summary judgment orders don't even address Weigel at all, even though we raised it. They only address Cruz, or the quorum summary judgment order only addresses Cruz in terms of saying, this is the definition of a hogtie, and they only address Booker. So I think that by bypassing the standard, there can't even be an Anderson analysis by the district court. Thank you, Your Honor. Thank you. Thank you, Your Honors, and may it please the Court. My name is Jessica Dark, and I serve on the Board of County Commissioners in the town of Porham, Jerome Wildcat, and Jack Denny. I will be yielding five minutes of my time to my co-appellees, Mr. Artis, who represents Muskogee County Board of County Commissioners, as well as Deputy Derek Appel. Your Honors, as you've pointed out, we have a video in this case that tells us the tale of what happened. That video, which was taken by the appellants themselves, shows us a man who was constantly struggling, resisting, violently, aggressively fighting these officers up until the very last second. The appellants' brief and their argument, they're attempting a scattershot approach. They're saying, out of all of these facts that happened that night, surely there must be just one a jury should get to decide. Your Honors, respectfully, that's not the case. You've pointed it out. What we have to do here today is decide, was Mr. Lynch ever effectively subdued when the officers were applying nonlethal force on him? And the answer is no. Contrast that to Weigel. Yes, Your Honor. How can you win when Weigel is out there? What's the difference? Your Honor, even if Officers Denny and Wildcat could have pressed pause in the moment and read the Weigel decision, they would have read about an officer who had dealt with a resisting subject who stopped resisting. He was restrained and he had quit resisting, so much so that the officer went back to his car and warmed his hands. Officers Denny and Wildcat never believed that this man was restrained to the point that they could just get up and walk away. Well, once the handcuffs were on, and once the leg restraints were on, how could he have posed a threat to the officers? Yes, sir. In the video, you can see... I've watched the video. And in the video, he is restrained. He is bucking these officers off of him. I understand, but how is he a threat to the officers? He may be struggling, but is he actually a threat? His hands are behind him. His legs are restrained. Anderson, this man weighed more than 50 pounds more than Officer Denny and nearly 100 pounds more than Officer Wildcat. Just describe what would happen. How do you envision that the officers could have been injured with him on the ground in that fashion? He jumps to his feet and what? He has elbows. He's throwing. He's also constantly inciting violence from his family members, who outnumber the officers on the scene whose vehicles are nearby. Well, counsel said that ended with Officer Shamblin. Are you contesting that? Yes, that's untrue. You can see in the video. You can hear when Officer Shamblin's calling for help, saying, help, help, I'm over here. And our officers arrive. He is still saying, kick him in the head, kick him in the head. Dad, knock him off of me. Grab a hammer out of my truck and get him, dad. The appellants themselves on the video are saying, stop resisting, Cody. They see that he is resisting these officers. So if the bystanders aren't responding to all of this again, where's the threat to the officers? That's a hindsight analysis, Your Honor. No, it's not. It's the question we have to ask. Could a reasonable jury find that there was excessive force here? And part of that question is whether the officers really needed to be kneeling on his back when he's got handcuffs and leg restraints on. Yes, Your Honor. If you look at all three of the gram factors, all three weigh in favor of using force. Well, okay, let's look at the gram factors, because that's exactly what I've been asking you about. The second gram factor is whether he posed a danger to the officers at that point. And the point we're legs are chained together. Now, he may have been a difficult person to get into the car. That's true. But is that a threat to the officers? Your Honor, it could be. And that's what they had to decide there on the side of the road in rural Oklahoma late at night when this man is repeatedly saying, you're not going to take me. I'm not going to go. And he is bucking and throwing his elbows around. He posed a risk of harm. I understand that argument then. Let's go to gram factor number three. How is he actively resisting arrest or attempting to evade arrest by flight? He's not going anywhere once he's handcuffed and his legs are chained together. Your Honor, based on the video, a reasonable officer in that situation could perceive him as doing such. That he can get away under those circumstances? That he could at least get up and attack them and pose further risk of harm. No. I'm asking about the third gram factor. How does that support your position? The third gram factor also assesses whether he's resisting, which is clear from the video. He's actively resisting and he's trying to get away. He is? Yes. And a reasonable officer. Did he move more than six feet in any direction once they had him on the ground? I don't know the exact measurements. Did he move at all? When they first started, when Officer Chamlin first started, they were handcuffed and chained. He wasn't handcuffed and chained when he was with Officer Chamlin. Correct, Your Honor. He was squirming and moving and trying to buck these officers off of him. So he's annoying. Your Honor, I wish he was only annoying. He was dangerous. He was hopped up on meth. If you're going to use the word, then you've got to explain how. And we've asked you several times, what was the danger? And you've said, well, he was repeatedly grabbed for Officer Wildcat's gun. With handcuffs? How does that work? And his hands weren't completely attached. His handcuffs, the handcuffs were behind him. How's he reaching for the gun? Your Honor, as the State of Escobedo pointed out by the appellants, that even someone who's restrained but is trying to batter an officer and is having some success at that, it can be said that it's reasonable for those officers to believe that he's posing a risk of harm. This man had never been patted down. That wasn't my question. If he's handcuffed, how is he going to get the officer's gun? I understand it could be difficult, but the fact is that the reasonable officer in that circumstance is feeling a suspect who's grabbing at his gun, has reason to believe that they need to use force to affect this arrest and to get him up and into the car and to the jail where he belongs. Well, what if the officer had just been in front of him and put his gun down? Well, he's still squirming. It's bothersome. He's obviously a troublesome person to encounter that evening. But my concern is he really didn't need to lie on his back, did he? Now, obviously, to get him restrained, they did. But once he was restrained, what's the justification other than he's squirming? Some restraints had been put in place, but the goal was to get him effectively subdued and to eliminate all of the threats and the transport belt around his middle, attaching the leg restraints to the belt. And once that had occurred, he would have been effectively subdued. In fact, that's what happened. As soon as those last clicks were in place, Officer Denny got off, turned him over. Then that's when they realized he had gone unconscious. This is very similar to the McCoy versus Myers case that this court ruled upon last year. In that case, the court found that all force used up until the point that the threat had been eliminated, which included a chokehold while dealing with a resisting subject, was reasonable. Part 2 says once you know this man is unconscious, you can't use any further force, including another chokehold or 10 strikes. This case, this is Part 1 of McCoy. This is all of the force needed to gain compliance from this subject and to get him effectively subdued. Why isn't it Part 2, when we have handcuffs and leg restraints? Because he was still resisting. And that is what the case is. Isn't that a jury question? No, the video speaks for itself, Your Honor. Isn't that a jury question? I do not believe it is. I believe the video speaks. A reasonable jury couldn't find that he was restrained. Is that what you're saying? I think they can find restraints by the fact there are handcuffs and leg irons, but the question is, was he effectively subdued? And in that video, he's not. He is tossing and turning and bucking these officers. Is subdued the legal, the magic word here, or is it threat to the officers? I think the magic words are effectively subdued, which can be defined as... Where do you get that from? Is that in a case? It is from the McCoy case, which is then defined by, Your Honor, I believe, as eliminating the risk. At that time, Mr. Lynch still posed some risk. Can I just follow up on one point that Judge Phillips made? You say in your brief, on page 15, that the pressure on Mr. Lynch's back was proportional to the presented threat. Now, doesn't that sound like a jury question? No, Your Honor. This was cleat-approved and trained techniques to have your knee on the shoulder and your knee on the lower back. No, no. Counsel, you made an assertion in your brief that the pressure was proportional to the circumstances. Now, that seems like a fact question. Why shouldn't that go to the jury? Your Honor, it's based on the video. It's based on the objective evidence filmed by the appellants themselves that showed this was needed. Well, you keep going back. But would it be unreasonable for a jury to say that, oh, that wasn't proportional? I believe when looking at the qualified immunity standard and seeing there's no underlying constitutional violation in conjunction with the fact there's no clearly established law to put these obstacles in place... I'm just asking about the fact question that you put in your brief. I do not believe it's a fact question, Your Honor. I believe the video and the record shows that. Proportional pressure isn't a fact question? That's a legal question? I believe when we have evidence like this, like this video, like Scott says, we have to look at the video and see for ourselves. And from the video, we conclude that no reasonable juror could find that. You're at your 10-minute mark, but I need to ask you one other thing. When the police chief of Porham testified, this is the police chief Catron, testified that the limits on force come from personal morals. That was about it. That's what he said at his deposition. Why wasn't that evidence of deliberate indifference to training? The policy in place says that you use the least amount of force necessary under the circumstances. Based on the circumstances... But this is the police chief making a statement about what the department expects of its officers, and he says it's up to personal morals. And to establish municipal liability on the town of Porham, the appellants are required to show prior instances of unconstitutional conduct, according to City of Canton and the Monell case. Not on a failure to train. That's the issue. Was that evidence of indifference, deliberate indifference, on training? I do not believe so, Your Honor. The officers are required to be CLEAT trained. They were trained and certified. They complied with all of the Porham's policies and procedures in that regard. I'll yield the rest of my time. All right. Thank you. Counsel, we'll give you a little extra time, but I'm going to have to be equal with the appellant, too. Thank you, Your Honor. I, Andy Artis, I represent Derek Apple and the Board of County Commissioners of Muskogee. With regard to your question, what would happen if Jack Denney and Wildcat got off of the back? Cody Lynch, very well based on what he was doing, would have been much easier for him to then pull his legs out from under Derek Apple, my client. Also, he would have been much more likely to be able to get up and thrive. He could injure himself. And he effectively could damage his head, his body. It isn't a threat to him, though, is it? It's a threat to the officers. And those around him as well. And the bystanders as well, Your Honor. And you think he can get up and run around when he's got leg restraints on? Your Honor, I do. They show these training videos of people who are handcuffed and with leg irons and what they can do and how they can get up. Did you present any evidence to that effect? No, Your Honor. Is there anything in the record that shows that? Only the video that we see. And you can see how he's fighting the whole time. I don't see him getting up or even trying to get up. And he's not getting up because they're holding him down. And they need to hold him down because they need to use the amount of force to counter the force that he's applying against them. This is a man who's already broken an officer's eye socket. And he's threatening and he's saying to the other people, hey, help me out. Does that justify excessive force? Well, this isn't excessive force, Your Honor. I'm not asking that. I'm asking if the previous injury to Officer Shamblin means that anything goes. No, it doesn't. Then why are we even talking about that? Well, because it shows he poses an immediate threat to the officers. It shows what he's capable of. It's the second standard of grant. If he's not handcuffed and shackled. Well, he's still struggling. He's still resisting. He punched Officer Shamblin before he was shackled. There is this case, Gianetti v. City of Stillwater, that Judge Henry wrote. It's at 216 Fed App 757. And there they had a lady who was in the jail who was handcuffed and she was struggling. And they had to tase her. They had to do all kinds of things to her. And the standard seems to be in all these cases. Were her legs shackled? No, but they were trying to get her changed out. How close were the officers to picking him up and moving him and taking him to jail? Well, what they were trying to do is to get his legs immobile so that my client could get off of him and so they could effectively either let him wiggle it out and calm down and so we could take him to the car. Because if they don't get his legs secure because he's fighting, he's kicking, then when they try to transport him to the car, he's going to kick them, he's going to kick the car out. I understand all that. I mean, he's not really secure, really, until he's in the car. I'm sorry. What about the waist belt? Wasn't he secure by then? He passed out before that. When you watch the video, you can see him just clicking the legs to the waist belt, just click it, and then that's the time that he passes out. So we don't get him restrained. We don't get him secured. So it's just like because he was struggling and resisting, the use of force was necessary. Is it your position that he was unconscious at the time that the waist belt was clicked on? Is that your position? I think the video shows that when they realized he was unconscious is right after they clicked that on and then they turned him over because that's what they were. They clicked him, they turned him over, and then within five to six seconds they realized, hey, he's not breathing, and then within eight seconds they're doing CPR and calling for EMS. So our position is he's not restrained until they finally get the legs so they can stand off him and they can know that, okay, we're no longer on him. He can't kick. He can't hurt himself. He can't hurt us. And then when we need to move him to the car, he's not going to kick us. He's not going to kick anybody else, and he's not going to kick the window out of the car, and they can deal with him. They can try to talk to him, try to calm him down, but until they get him into that position where he's no longer resisting and fighting them and thrashing, then they've got to use the amount of force to contain him is our position. I'm getting close on time. I probably need to move over a little bit to the municipal liability for the board. Can you summarize your position there and then we'll move on? Yeah. I mean, you've got to show an underlying constitutional claim first, which we say there is an under Graham and a precedent of Gianetti and McCoy. But then you also have to show a policy that caused the unconstitutional violation, and then you have to show deliberate indifference, that they were deliberately indifferent. And here, I don't know if it's clear to the court, but Apple received 74 hours of CLEAD basic refresher courses two months before this incident, on January 30, 2015. Seventy-four hours he received. And the CLEAD training materials that are in the record at appendix 4518 through 4527, they talk about positional asphyxiation, excited delirium, sudden in-custody death syndrome, hog tying and hobbles. That shows the training that they give in that CLEAD training. Apple's CLEAD records at appendix 1376 through 1377 show that he received that 74 hours. And then we've got the policy at 1378 through 1381, which, if you read it, is very clear that it's constitutional. These are all cited in your brief. Yes, yes, yes, Your Honor. Why don't you go ahead and sum up? There's no deliberate indifference. And Apple didn't do anything. He didn't put any weight on anybody. The gram factors are in his favor. The precedent, the clearly established law with Gianetti and McCoy are in his favor. And then look at the video and look at all the people who are around. They're never saying, hey, get off of him. Hey, don't struggle. Thank you, counsel. I'm always impressed how those final sentences never have periods in them. All right. You know what? You're going to get almost your three minutes. Your Honor. Is that about right? Yes. Okay. Unless Your Honor has any specific inquiries, I'll cede the rest of my time. Oh, all right. All right. Any questions? No, I'm good. It's an honor to be here today. I appreciate it. Thank you. Thank you. Thanks to both. Thanks to all of you. The arguments were helpful. We appreciate your being here and preparing for today. And the case will be submitted. Counsel are excused.